UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Marquis Lenox Parker, # 11B0717

Plaintiff(s),

v.

Lieutenant Donnelly, Hearing
Officer, Auburn Correctional Facility,
et. al.,

Defendant(s).

U.S. DISTRICT COURT N.D. OF N.Y.

**FILED**

FEB – 4 2021

AT_____ O'CLOCK

John M. Domurad, Clerk - Syracuse

**COMPLAINT**
(Pro Se Prisoner)

**Case No.** 9:21-cv-130 (LEK/ATB)
(Assigned by Clerk's
Office upon filing)

**Jury Demand**
☐ Yes
☑ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's social security number, taxpayer identification number, or birth date; the name of a person known to be a minor; or a financial account number. A filing may include *only*: the last four digits of a social security number or taxpayer-identification number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. *See* Fed. R. Civ. P. 5.2.

---

I.   **LEGAL BASIS FOR COMPLAINT**

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution and laws of the United States. Indicate below the federal basis for your claims.

☑ 42 U.S.C. § 1983 (state, county, or municipal defendants)
☐ *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)
☐ Other (please specify) _____

II.    **PLAINTIFF(S) INFORMATION**

Name:    Marquis L. Parker

Prisoner ID #:    11-B-0717    Upstate

Place of detention:    ~~Great Meadow~~ Correctional Facility

Address:    P.O. Box 51

~~Comstock~~, New York ~~12821~~

Malone    12953

Indicate your confinement status when the alleged wrongdoing occurred:

☐ Pretrial detainee
☐ Civilly committed detainee
☑ Convicted and sentenced state prisoner
☐ Convicted and sentenced federal prisoner
☐ Immigration detainee

Provide any other names by which you are or have been known and any other identification numbers associated with prior periods of incarceration:

_____

If there are additional plaintiffs, each person must provide all of the information requested in this section and must sign the complaint; additional sheets of paper may be used and attached to this complaint.

III.    **DEFENDANT(S) INFORMATION**

Defendant No. 1:    Donnelly (Male)
Name (Last, First)

Lieutenant (Hearing Officer)
Job Title

(Auburn Corr. Fac.) 135 State St, Box 618
Work Address

Auburn    New York    13021
City    State    Zip Code

Defendant No. 2:    Allen, E (Female)
Name (Last, First)

Correctional Officer
Job Title

2

(A.C.F) 135 State St., Box 618
Work Address

Auburn     New York     13021
City          State          Zip Code

**Defendant No. 3:** Schwab, B. (Male)
Name (Last, First)

Correctional Officer
Job Title

(A.C.F.) 135 State St., Box 618
Work Address

Auburn     New York     13021
City          State          Zip Code

**Defendant No. 4:** Venettozzi, D (N.Y.S.D.O.C.C.S.)
Name (Last, First)

(Director) Special Housing/Inmate Disciplinary
Program
Job Title

(Central Office) 1220 Washington Ave., Bldg #2
Work Address

Albany     New York     12226
City          State          Zip Code

If there are additional defendants, the information requested in this section must be provided for each person; additional sheets of paper may be used and attached to this complaint.

## IV.   STATEMENT OF FACTS

State briefly and concisely the facts supporting your claims. Describe the events in the order they happened. Your statement of facts should include the following:

- The date(s) on which the events occurred
- Where these events took place (identify the facility and, if relevant, the specific location in the facility)

3

Defendant No. 5: Doe, John (Male)
Job Title: Corrections Officer
Work Address: Southport Correctional Facility
236 Bob Masia Drive
P.O. Box 236
Pine City, New York 14871


Defendant No. 6: Doe, John (Male)
Job Title: Corrections Officer
Work Address: Southport Correctional Facility
236 Bob Masia Drive
P.O. Box 236
Pine City, New York 14871

- How each defendant was involved in the conduct you are complaining about

If you were physically injured by the alleged misconduct, describe the nature of your injuries and the medical evaluation and treatment you were provided. You need not cite to case law or statutes or provide legal argument in the Statement of Facts. Use additional sheets of paper if necessary.

_See Attached Paper_

---

## V.    STATEMENT OF CLAIM(S)

State briefly and concisely the constitutional and/or statutory basis for each claim you seek to assert and identify the defendant(s) against whom each claim is

5

1.) On December 5th, 2017, inmate ("Plaintiff") Marquis Lenox Parker, Din # 11B0717 was in the custody and control of New York State Department of Corrections and Community Supervision. On said date, Plaintiff, was an inmate and housed at ("A.C.F.") Auburn Correctional Facility.

2.) On this date, ("Defendant Allen"), who was a Corrections Officer at A.C.F, recognized me and had a personal vendetta, who decided this day to falsified a misbehavior report against the plaintiff. This false report was also endorsed by, ("Defendant Schwab"), who was also a Corrections Officer at A.C.F.

3.) This falsified misbehavior report that was written and filed, caused the plaintiff to be admitted in ("A.C.F.")("S.H.U.") Special Housing Unit on this date, approximately between the hours of 6:00 p.m. to 8:00 p.m., where the plaintiff remained for the rest of his time as an inmate at A.C.F.

4.) On December 13th, 2017, due to this pending false report, a Superintendent Hearing commenced against the plaintiff, in front of Hearing Officer ("Defendant Lieutenant Donnelly"). This proceeding did not conclude until January 4th, 2018.

5.) However, the defendant Lt. Donnelly, during this proceeding, violated the plaintiff due process rights to a fair and impartial hearing, as well as denying his right to call two important witnesses, who was highly relevant to the plaintiff defense.

6.) The defendant, Lt. Donnelly concluded this hearing on January 4th, 2018 and found the Plaintiff guilty of all pending misbehavior charges lodged into this falsified report and sentenced the Plaintiff to 180 days to SHU solitary confinement, with 180 days loss of Packages, Commissary and Phone.

7.) The Plaintiff filed an administrative appeal in accordance with rules and regulations to the Acting Commissioner, Anthony J. Annucci. However, on the behalf of the commissioner, the Plaintiff, appeal was forward to the ("Defendant D. Venettozzi") Director of Special Housing/Inmate Disciplinary Program to decide such appeal. On March 6th, 2018, defendant Venettozzi reviewed and modified the Plaintiff administrative appeal by dismissing only one charge but with "no change in the penalty imposed." Defendant Venettozzi however violated the Plaintiff due process rights by not reversing such disciplinary violations after being notified through such appeal.

8.) Plaintiff spent from the dates of December 5th, 2017, until he was release on April 20th, 2018, which is a total of 138 days with loss of Packages, Commissary and Phone, in SHU solitary confinement. From December 5th, 2017 to January 22nd, 2018, Plaintiff was housed at A.C.F. SHU solitary confinement. While Plaintiff was housed in this facility SHU, Plaintiff was continuously denied his entitlements that other SHU inmates had during his stay at this facility. Plaintiff was not allowed to attend not one "rec" hour that he was entitled to. There were times where Plaintiff was denied showers when certain

C.O.'s worked on shower shifts. The average SHU inmate is entitled to (3) showers per week. Plaintiff was allowed at least (1) shower per week and (2) showers per week if he was lucky, but never all three entitled showers. Once plaintiff was forced to take a shower with his hands handcuffed behind his back and threaten with physical abuse if he didn't comply with the order " to stand underneth the shower head with all his clothes he had on going to the shower, then was placed back into his cell with all these wet clothes on."

9.) On December 6th, 7th and 8th of 2017, Plaintiff was skip pass for Breakfast, Lunch and Dinner (Chows) because of the falsified report that cause plaintiff to be placed in solitary confinement at A.C.F. SHU. During these above dates, Plaintiff suffered named calling misconduct, being called names like "Monkey, Peeping Tom, Stalker, Rape-0 and Black-Deer." The "Black-Deer" name stuck with the plaintiff at both facility he spent in solitary confinement. However, during the rest of the time the plaintiff spent at ACF, he learned that the name "Black-Deer" meant "it's the special black-deer that everybody want to hunt to kill and hang on their trophy wall."

10.) Once Plaintiff finally had the chance to speak with the A.C.F. SHU area supervisor on the late even of December 8th, the skipping for chow from the past 72 hours slowed down. However, there was days he was denied chow meals. On December 25th, 2017 on "Christmas Day", plaintiff was skip again for

Chow, where all other A.C.F. SHU inmates was served "brunch" and plaintiff was then served two loaf of breads and butter and was told by these c.o.'s working this day, "Merry Christmas Black-Deer." Accordingly, from other multiple housed SHU inmates surrounding the plaintiff, this was a "special meal" that the State of New York pay's for every inmate incarcerated in this State for the Christmas holiday. Also later that evening, all other A.C.F. SHU inmates was served (1) ice-cream and (1) muffin, but not the plaintiff. Plaintiff felt hopeless, depressed and sucidical this day.

11.) There were days at A.C.F. SHU surrounding inmates by the plaintiff would "bully" the plaintiff because A.C.F. c.o's would tell these surrounding inmates that the plaintiff was in prison for "Rape" and was in the SHU for "stalking one of the female c.o's who worked at that facility." That subjected the plaintiff to horrible name calling, including the name the c.o.'s made up for the plaintiff "Black-Deer." Plaintiff was continuously harassed at this facility by c.o's and inmates because of this falsified misbehavior report, until plaintiff was transferred to his next facility, Southport Correctional Facility "(S.C.F.)" on the date of January 22nd, 2018. During the time spent at A.C.F. SHU area, plaintiff dealt with mental and emotional distress.

12.) While being transferred from A.C.F. to S.C.F., plaintiff continued to receive an atypical and significant hardship until his SHU solitary confinement was over. The day of the plaintiff

transfer, the c.o.'s at A.C.F. continued to inform their co-worker's in front of numerous inmates to call the plaintiff by "Black-Deer" and that the plaintiff was in prison for "Rape" and in the SHU for "Stalking a female c.o." which these misconducts followed the plaintiff all the way to his new facility "S.C.F.".

13.) On January 24th, 2018, plaintiff was housed at S.C.F. confined to his cell for 24 hours per day, on B-Block, 3 gallery, cell number 5. On the above date at approximately 12:00 p.m. to 1:00 p.m., the facility maintenance crew was working on the plaintiff toilet pipe line behind his cell, when his cell toilet spontaneously erupted with extremely nasty raw sewage water mixed with human feces and urine, and spilled onto the plaintiff entire cell floor, which smelled awful and look even worst.

14.) Other inmates alleged the same exact thing happened while in their confined cells. All of the inmates whom alleged this occurred in their cells also, all started to yell for immediate assistance. When the c.o. "(Defendant John Doe #1)" was conducting his round, plaintiff notified Defendant John Doe #1 with full visual and oral knowledgment to this incident that was occurring in the plaintiff cell. Defendant John Doe #1 then stated to the plaintiff "the plummers are working on the toilet pipe lines behind the cells and the porters will come over and clean this up after the plummers are finished working in the back."

15.) When the area sergeant made his round, the plaintiff and other inmates also notified him by visual and oral of this incident, at which point he gave a direct order to defendant John Doe #1, who was escorting the sergeant on his rounds, "to get this mess cleaned up."

16.) However, when defendant John Doe #1 made his next round, he was extremely upset and told all the inmates who voiced their concern regarding this incident "I told ya'll that I was going to have the porters come over here and clean this up after the plummers were finished working in the back but since everybody wanted to say something to the sergeant, I'm not doing shit. Hope you all like the sight and enjoy the smell of shit because you will be in it all night."

17.) Once the shift changed, a different C.O. "(Defendant John Doe #2)" made his round, at which point all of the same housed inmates then notified this C.O. with visual and oral knowledgment about what happen and they need cleaning supplies. Defendant John Doe #2 then said "didn't the officer before me tell ya'll were burnt for the day with cleaning supplies, so enjoy the night with the sight and smell of shit."

18.) However, Defendant John Doe #2 brought the porter over just to clean all the raw sewage waste that spilled onto the gallery floor, coming from the plaintiff cell floor. The plaintiff ask the porter "to use the cleaning supplies to clean his cell floor also." At which point, Defendant John Doe #2 screamed on the

plaintiff by stating "you are not getting shit and stop talking to my fucking porter." The plaintiff and all other concerned inmates were denied any cleaning supplies to clean up this mess that was in their cells.

19.) In order to clean his cell floor, plaintiff had to use his only state issued towel and bare hands to pick up the human feces and place it back into the toilet. Plaintiff also used this same towel and bare hands to soak up the nasty smelly sewage urine water, then rang out the soak towel using his bare hands back into the toilet.

20.) During this time while the plaintiff was using his bare hands and only state issued towel to self clean this disgusting mess, the sight and the smell made the "vomit" and "self-cry" because he felt degrading. The denial of such cleaning supplies led the plaintiff and the others to file grievances.

21.) A few days later, the plaintiff had became very sick for approximately a week or so, which he had to be prescribe with some self-medication from S.C.F medical staff, in order to help cope and get through the time he was physically ill.

22.) During the time that the plaintiff was physically ill, he had diarrhea, sore throat, productive cough, running nose, blood in his mucous, cold-like symptoms, chills, vomitting, trouble eating and sleeping.

23.) Plaintiff appealed the denial of his filed grievance to the highest level to the C.O.R.C. (Central Office Review Committee), where this office made their finally decision on June 26th, 2019.

24.) While housed at S.C.F. from the date of January 22nd, 2018 to the date of April 20th, 2018, plaintiff continued to suffer from an atypical and significant hardship.

25.) Plaintiff was never allowed to attend his hour of "rec" while confined at this facility.

26.) Plaintiff was skip on permitted "shower days" at least 20 to 30 times during his stay at this facility.

27.) Plaintiff was not allowed to attend permitted "hair cut days" because he was known as the "Black-Deer" and was to be treated like an animal.

28.) Plaintiff was skip on "chow meals" at least 20 to 30 times during his stay at this facility.

29.) Plaintiff filed a CPLR article 78 in Albany County relating his due process rights that was violated during his disciplinary hearing. Plaintiff raised the hearing officer violated his due process rights to call (2) witnesses on his behalf, where the defendant Donnelly denied these two witness as irrelevant.

13

30.) Plaintiff also argued that the defendant Donnelly denied the plaintiff his due process right to a fair and impartial hearing officer, where this defendant led the witnesses questions and answered some questions the plaintiff sought the called witnesses to answer. This defendant also prejudge evidence before hearing all the evidence presented at the hearing.

31.) On September 19th, 2019 the State of New York, Supreme Court, Appellate Division, Third Judicial Department, Justices reverse the defendant(s) Donnelly and Venettozzi decisions, finding that defendant Donnelly "improperly denied the plaintiff request to call as witnesses the two inmates who were housed on each side of his cell, as their potential testimony was highly relevant to the plaintiff defense that he was in his cell during the time of the underlying incident." The honorable justices however did not address plaintiff remaining claim.

32.) On September 25th, 2019 the defendant Venettozzi reviewed and administratively reversed plaintiff disciplinary hearing only after the honorable court already reversed such determination and after the plaintiff already served his disciplinary sentence.

33.) During the time that the plaintiff spent in SHU solitary confinement, plaintiff dealt with issues concerning his mental and emotional mind state base on all the harassment he was subjected to, as well as all of the things he was denied that he was entitled to. Because plaintiff was suffering with his mental and emotional distress during his time he spent in SHU solitary confinement, he talk and continued to talk with S.C.F. Office of Mental Health Clinician Ms. L. McKenzie until he was released from SHU solitary confinement on April 20th, 2018.

# FIRST CLAIM

Plaintiff is suing defendant Lieutenant Donnelly in his individual capacity, where defendant Donnelly presided over plaintiff disciplinary hearing, and denied plaintiff his due process by failing to call (2) of his requested witnesses to disprove that the Plaintiff was in his cell when this alleged incident occurred. Also defendant denied plaintiff his due process to an impartial and fair hearing officer by prejudging the evidence, by answering the questions that was asked by the plaintiff to be answered by the called witnesses and leading these called witnesses to an affirmative type of answer to his liking. After all plaintiff was disciplined without adequate due process.

Defendant denied the plaintiff his protected liberty interest when the defendant sentenced the plaintiff to 180 days SHU solitary confinement, where he denied the plaintiff adequate due process at his disciplinary hearing. As this result, plaintiff suffered an atypical and significant hardship during his SHU solitary confinement time. While plaintiff was housed in SHU solitary confinement at A.C.F. from the dates of December 5th, 2017 until he was transferred to S.C.F. SHU solitary confinement on January 22nd, 2018, plaintiff was continuously denied his entitlements that other SHU inmates had during his stay at this facility. Plaintiff was not allowed to attend a single "rec hour" because he was denied by this facility staff members. There were also times when the plaintiff was denied "showers" when certain C.O.'s worked on these shower days. The

16

average SHU inmate is entitled to (3) showers per week, but however, plaintiff only received (1) shower to (2) showers per week but never all (3). Once plaintiff was forced to take a shower while his hands were handcuffed behind his back and was still fully clothed, where he was threaten with physical abuse if he didn't comply to stand under the running shower head and then placed back into his cell with these wet clothes.

On December 6th, 7th and 8th of 2017, plaintiff was denied breakfast, lunch and dinner treys. On December 25th, 2017 plaintiff was denied the "Christmas Meal" every other SHU inmate received and instead was fed "loads of bread" and "butter," and later that evening was also skip on the "special desert" every other inmate received for "Christmas," which was (1) ice cream and (1) muffin. Plaintiff felt emotionally damaged because on how he was treated on this holiday date.

Plaintiff was also subjected to "name calling" misconducted by A.C.F. staff members, and was lied upon by staff members where they lied and told other inmates that plaintiff was in prison for "Rape" and was in SHU confinement for "stalking a female c.o." where these inmate used this information against the plaintiff, until he was finally transferred from this facility to S.C.F. on January 22nd, 2018.

Plaintiff continued to be subjected to an atypical and significant hardship after being transferred to S.C.F. On January 24th, 2018 while the plaintiff was in his cell, his toilet spontaneously erupted with extremely nasty raw sewage water mixed with human feces and urine and spilled onto the plaintiff entire cell floor, which smelled awful and look even worst. Defendant's John Doe # 1 and John Doe # 2 after having full visual and oral aknowledgment of this incident Failed to supply any cleaning supplies to the plaintiff, which caused him to be ill for a week or two.

For the rest of the entire time the plaintiff spent at S.C.F. SHU solitary confinement was not allowed to attend his "hour of rec," was skip at least to (20) to (30) times on "permitted shower days," was skip on "chow" at least to (20) to (30) times and wasn't allowed to receive "any hair cuts" because he was "to be treated like an animal." To help cope with his emotional distress he was suffering from, he talked and was counseled by the "Office of Mental Health, Clinician Ms. L. McKenzie." Plaintiff discussed how he had troble sleeping, was afraid to leave his assigned cell, felt worthless, hopeless, and how he felt he couldn't trust the facility staff to protect him because they were the "main ones" harassing him and causing him depression and anxiety

## SECOND CLAIM

Plaintiff is suing defendant Corrections Officer E. Allen in her individual capacity, where she falsified a misbehavior report and falsly testified at the subsequent hearing. However at the subsequent disciplinary hearing,

18

the plaintiff was denied adequate due process rights (See, First Claim). Plaintiff also suffered an atypical and significant hardship during his duration time he spent confined in SHU solitary confinement as a result of the flawed disciplinary hearing (Also see, First Claim). Plaintiff also suffered mental and emotional distress, which was caused upon the plaintiff from the result of the time he spent confined in SHU solitary confinement (Also see, First Claim).

## THIRD CLAIM

Plaintiff is suing defendant corrections officer B. Schwab in his individual capacity, where he endorsed a falsified misbehavior report and testified falsly at the subsequent disciplinary hearing. However, at the subsequent disciplinary hearing was denied adequate due process rights (id.). Plaintiff also suffered an atypical and significant hardship during his duration time he spent confined in SHU solitary confinement as a result of the flawed disciplinary hearing (id.). Plaintiff also suffered mental and emotional distress, which was caused upon the plaintiff from the result of the time he spent confined in SHU solitary confinement (id.)

## FOURTH CLAIM

Plaintiff is suing defendant the Director of the Special Housing/Inmate Disciplinary Program D. Venettozzi in his individual capacity, after informing this defendant through an appeal of the due process violations that occurred during the plaintiff flawed disciplinary hearing, which the

defendant failed to remedy such violations. Defendant modified the plaintiff disposition on appeal by "dismissing one charge." but "no change in penalty." Because the defendant failed to remedy such due process violations that occurred during the plaintiff flawed disciplinary hearing, plaintiff spent from December 5th, 2017 to April 20th, 2018 in SHU solitary confinement, where plaintiff suffered an atypical and significant hardship during this time as well as mental and emotional distress (id.).

## FIFTH CLAIM

Plaintiff is suing defendant corrections officer John Doe #1 in his individual capacity, where defendant was working as a corrections officer at S.C.F. on the date of January 24th, 2018, where plaintiff was confined to his cell for (24) hours a day. Plaintiff is suing this defendant for unsanitary conditions of confinement because when plaintiff was in his cell on above date at approximately been noon hour and 1:00 p.m., facility maintenance crew was working on plaintiff toilet pipe line behind his cell, when his toilet spontaneously erupted with extremely nasty raw sewage water mixed with human feces and urine, where it spilled onto plaintiff cell floor, covering his entire cell floor, which smelled awful and look even worst.

When the defendant made his round, plaintiff notified the defendant with visual and oral acknowledgment to this incident that just occurred inside the plaintiff cell. Defendant acknowledged

such incident that just occurred in plaintiff cell and informed plaintiff that "the plummers were working behind the cells on the toilet pipe lines and when they are finished, he'll have the porters come clean up the mess." However, the next round the area sergeant walked and the plaintiff also notified the sergeant with visual and oral knowledgment of this incident that occurred in plaintiff cell. The area sergeant then turnt to the defendant, who was with him while he was conducting his round and ordered the defendant "to get this mess cleaned up."

However, once the defendant made his next round, he was extremely upset at the plaintiff and others who voiced their concern regarding this incident to the area sergeant. He then stated "I told you all that I was going to have the porter come over here and clean up this mess after they were finished working in the back but since everybody wanted to say something to the sergeant, I'm not doing shit. Hope all of you like the sight and enjoy the smell of shit because you are going to be in it all night."

Because of the defendant being upset with plaintiff and others for informing the area sergeant, defendant denied the plaintiff any cleaning supplies, which plaintiff had to use his bare hands and state issue towel to clean up all the human feces, urine mixed with sewage water in order to clean up the disgusting mess that covered his entire cell floor. The denial of such cleaning supplies cause plaintiff

and others to file grievances. The aftermath of this incident, Plaintiff became extremely physically ill for at least a week or two as well as mental and emotional distress.

## SIXTH CLAIM

Plaintiff is suing defendant corrections officer John Doe # 2 in his individual capacity, where defendant was working as a corrections officer at S.C.F. on the date of January 24th, 2018 where plaintiff was confined to his cell for (24) hours a day. Plaintiff is suing this defendant for unsanitary conditions of confinement because as the next correction officer on duty for the 3:00 p.m. to 11:00 p.m. shift, defendant was also informed with visual and oral acknowledgment from the same incident that occurred and mentioned in the "Fifth Claim," where defendant continued to denied the plaintiff with any cleaning supplies and who had the same state of mind as the "defendant John Doe # 1," when he stated "didn't the officer before I came in tell you all were burnt for the day with any cleaning supplies, so enjoy y'all night with the sight and smell of shit."

The denial of cleaning supplies and the same mind set continued later when the defendant brought the porter over to clean the raw sewage waste that spilled onto the gallery floor from the plaintiff cell floor, where the plaintiff ask the porter "to use the cleaning supplies to clean his floor also?" The defendant then screamed at

the plaintiff and stated "you're not getting shit and stop talking to my fucking porter."

Again plaintiff was not provided with any cleaning supplies from this defendant, which plaintiff had to use his bare hands and state issued towel to clean human feces, urine and sewage water to clean up this disgusting mess that covered the plaintiff entire cell floor. The denial of such cleaning supplies cause plaintiff and others to file grievances. The aftermath of this incident, plaintiff became extremely physically ill for at least a week or two as well as mental and emotional distress.

asserted. Commonly asserted claims include: excessive force; failure to protect; deliberate indifference to medical needs; unconstitutional conditions of confinement; denial of due process in a disciplinary or other proceeding; denial of equal protection; retaliation for the exercise of a First Amendment right; and interference with free exercise of religion. Legal argument and case citations are not required. Use additional sheets of paper if necessary.

**FIRST CLAIM**

See Attached Paper

_____

_____

_____

**SECOND CLAIM**

_____

_____

_____

**THIRD CLAIM**

_____

_____

_____

## VI.    RELIEF REQUESTED

State briefly what relief you are seeking in this case.

Each named defendant pay Plaintiff $50,000.00 in compensatory damages, $100,000.00 in punitive damages and $100,000.00 for mental and emotional distress

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 12/3/20            Marquis D Parker
                          Plaintiff's signature
                          (All plaintiffs must sign the complaint)

(revised 10/2/16)

24